# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

| | |
|---|---|
| **WILLIE DARELL BABER** | **CIVIL ACTION NO. 08-1545** |
| LDOC #523832 | |
| VS. | SECTION P |
| | JUDGE JAMES |
| **ALLEN CUPP** | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Willie Darell Baber, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on October 10, 2008. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC). He is incarcerated at the Richland Detention Center (RDC), Rayville, Louisiana; he complains about conditions of confinement at that facility. Plaintiff prays for compensatory damages of $25,000,000 from RDC's Warden Allen Cupp. This matter has been referred to the undersigned for review report and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous.

### *Statement of the Case*

*1. Original Complaint*

Plaintiff is an LDOC inmate. He has been incarcerated at the RDC since April 2008. He complained in general of conditions of confinement at that facility and in particular he complained of (1) overcrowding, (2) unsanitary toilets, (3) imposition of sales tax on commissary items, (4) overcharging for postage, (5) interference with the plaintiff's ability to file this complaint, (6) smoking in the cafeteria, (7) the use of racial slurs and profanity by prison guards, (8) no non-smoking dorm, and, (9) inadequate personal hygiene opportunities.

On December 18, 2008, the undersigned completed an initial review of the complaint and directed plaintiff to amend to provide more specific information. Among other things, the undersigned observed that plaintiff had not "... indicated when and for how long a period of time he was exposed to these conditions of confinement." Further, the undersigned noted that plaintiff had not "... indicated whether he sustained any injury or harm as a result of his exposure to these conditions." Accordingly, plaintiff was directed to "... amend his complaint to provide a more detailed description of the conditions complained of and, ... [to] <u>describe in detail the harm or injury he sustained as a result</u>." [rec. doc. 5] Further, plaintiff was instructed on the applicable principals of law with regard to supervisory liability and deliberate indifference; he was then directed to show "personal involvement" and "deliberate indifference" on the part of Warden Cupp. [*Id.*]

**2. First Amended Complaint**

On January 7, 2009, plaintiff submitted an amended complaint in which he alleged :

1. That he was transferred to RDC on April 22, 2008, and that for 60 days following his transfer he and 24 other inmates were required to sleep on the floor due to overcrowding. According to plaintiff this caused him to suffer "... severe back problems that I'm still dealing with...";

2. That RDC does not provide "proper disinfectants" for the toilets and urinals "... forcing [plaintiff] to use them and go to sleep smelling these awful smells..."

3. That RDC imposes an 8% sales tax on commissary items including over- priced postage stamps;

4. That RDC administration did not answer his prisoner grievances and did not provide him with a Section 1983 Complaint form, which plaintiff ultimately had to obtain from a fellow

inmate;

 5. That on May 13, 2008 a corrections officer was smoking in the cafeteria and blew smoke in plaintiff's face;

 6. That on May 26, 2008, a corrections officer used a derogatory racial epithet in conversation with plaintiff;

 7. That RDC has no non-smoking dorm;

 8. That RDC does not allow inmates to shower immediately upon their return from recreation thus forcing plaintiff to smell himself and others. [rec. doc. 6]

*3. Second Amended Complaint*

 Plaintiff was again directed to amend to provide more specific allegations of fault and injury. On March 30, 2009, plaintiff filed another amended complaint which alleged the following with respect to each of his claims for relief.

 1. Sleeping Arrangements – Plaintiff arrived at RDC on April 22, 2008. He was given a "... thin, very thin mattress," one sheet, and one blanket. On June 3, 2008 he requested a larger mattress because he at that time he was experiencing "lower back pain and aches." He also requested an examination by a physician or chiropractor but was denied. He was, however, provided ibuprofen for the pain. According to plaintiff, these problems did not arise until "a few days before" he visited the medical department. According to the earlier complaints, the complained of sleeping arrangements lasted for 60 days, or until June 22, 2008.

 2. Smoking – On May 13, 2008, Deputy Wilson was observed smoking in the cafeteria's entrance. When plaintiff passed him, Wilson blew a "cloud of smoke" in plaintiff's face. Plaintiff "started to wheeze a little bit ..." until six minutes later when he was "far enough away to get some fresh air and recover [his] breathing." Plaintiff experienced "slight" nausea and wheezing

for 6 minutes.

3. Non-smoking Dormitory – Plaintiff entered I-Dorm on April 22, 2008; he has remained there since his incarceration. Upon entry into the dorm he observed "... smoke everywhere looming in the air..." He estimated that 80 of the 100 inmates housed in I Dorm were smokers. He immediately requested a transfer but his requests were ignored. He spoke to Major Stokes who denied his request and told plaintiff that he should not have gone to jail. This exposure did not cease until October 2008 when RDC instituted its non-smoking policy. Plaintiff alleged that exposure to tobacco smoke affects his breathing and health but did not otherwise elaborate on the harm sustained as a result of the exposure in question.

4. Unsanitary Toilets – Plaintiff claimed that RDC "... has not used proper disinfectants for the toilets and urinals..." As a result he has had to endure the odor of urine and feces. Plaintiff also complained that he developed boils on his buttocks "every so often" from using the toilets.

5. Racial Slurs – On May 26, 2008, Lt. Lloyd Ham used a racial epithet which caused plaintiff "shock and awe." Plaintiff claimed that his action amounted to mental and emotional abuse and excessive force which violated his Eighth Amendment rights.

6. Access to Courts – Plaintiff claimed that the law library refused to provide him with a copy of the form for filing §1983 complaints; an unidentified employee advised plaintiff to obtain a copy of the §1983 complaint form from the Warden. Plaintiff claimed that Warden Cupp refused to give him the form because plaintiff would not identify the claims he proposed to raise in the instant suit.

7. Inadequate Personal Hygiene Opportunities – Plaintiff complained that upon his return from recreation in the morning he is not allowed to shower immediately and he must wait until after supper or until 4:00 - 4:30 p.m. As a result, plaintiff claims that his "... body has picked up

4

an odor from the sweat and must that is very hard to get off...”

8. Sales Tax – Plaintiff complained that he was charged 8% sales tax on purchases at the prison. He requested a W-4 form to file his taxes and he was denied. Plaintiff claims that since he is unemployed and a dependant, he should not be required to pay taxes.

9. Postage – Plaintiff complained that he is charged 10¢ extra for a book of stamps.

*Law and Analysis*

*1. Screening*

When a prisoner is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116,

1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but, they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Furthermore, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Courts are not only vested with the authority to dismiss a claim based on an indisputably meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). A complaint is frivolous if it lacks an arguable basis in fact (i.e. the facts are clearly baseless, a category including allegations that are fanciful, fantastic, or delusional). *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir.1995); *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); *Denton v. Herndandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

Plaintiff's original complaint sets forth his claim and the basis for his cause of action. Since the complaint lacked detail, plaintiff was provided some instruction on the law and ordered to amend his complaint to provide more specific information. He was then given yet another opportunity to plead his claims. He need not be permitted further amendment because his claims are manifestly frivolous.

***2. Conditions of Confinement – Overcrowding, unsanitary toilets and showers, smoking in the cafeteria, non-smoking dorm, and personal hygiene opportunities.***

Plaintiff's original and amended complaints implied that he was exposed to unconstitutional conditions of confinement during his stay at RDC. More specifically he complained that due to prison overcrowding he was required to sleep on a "very thin" mattress on the floor for the period of 60 days from April 22 - June 22, 2008; that the toilets and urinals were unsanitary; that a Corrections Officer smoked in the cafeteria and blew smoke in plaintiff's face on May 13, 2008; that the facility provided no non-smokers dorm; and that inmates were not allowed an immediate shower upon their return from recreation in the morning.

Complaints about prison conditions are analyzed under the Eighth Amendment which proscribes cruel and unusual punishment. While the Eighth Amendment does not prohibit punishment it does prohibit cruel and unusual punishment including the unnecessary and wanton infliction of pain. See *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Additionally, while the Eighth Amendment does not mandate comfortable prisons, it does not permit inhumane ones. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999).

Federal courts employ a two-part test to determine whether a prisoner has established an Eighth Amendment violation. *Harper,* 174 F.3d at 719. First, there is an objective requirement that the plaintiff demonstrate conditions "so serious as to deprive prisoners of the minimal measure of life's necessities," as when the prisoner is denied "some basic human need." *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995); *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Second, under a subjective standard, it must be shown that the responsible prison officials acted with deliberate indifference to the prisoner's conditions of confinement. *Woods*, 51 F.3d at 581. "The second requirement follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Farmer*,

7

511 U.S. at 834, 114 S.Ct. 1970 (internal quotation marks and citations omitted) (emphasis added).

"For conditions of confinement to rise to the level of an Eighth Amendment violation, they must be "cruel and unusual" under contemporary standards. *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. *Id.* However, when the restrictions of confinement rise to a level that results in physical torture, it can result in pain without penological purpose constituting cruel and unusual punishment under the Eighth Amendment. *Id.*" *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). Plaintiff's complaint simply does not rise to the level of Eighth Amendment violations.

As shown above, federal courts, with regard to prisoner suits filed *in forma pauperis*, are authorized "... to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff was required to sleep on a mattress on the floor of his dormitory for a period of just over 2 months; he was exposed to smelly toilets and urinals; he was provided only 1 shower per day; on one occasion, a corrections officer smoked in the cafeteria and blew smoke in his face; and, the facility failed to provide a non-smoking dorm. Such claims, standing alone, simply do not rise to the level of cruel and unusual punishment as defined by the jurisprudence, because, with regard to each of these claims, plaintiff has not alleged that he sustained anything other than *de minimis* [1] harm or injury as a result to his exposure to the complained of conditions.

---

[1] It has been suggested that "...an appropriate *de minimis* standard would be whether as a common-sense category approach to the injury; would the injury require or not require a free world person to visit an emergency room, or have a doctor attend to, give an opinion, diagnosis and/or medical treatment for the injury? In effect, would

With regard to the sleeping arrangements complained of herein, plaintiff was directed to amend his complaint to provide specific information concerning injuries. Initially, the only complaint of injury was a conclusory claim that he sustained "severe back problems" as a result of being required to sleep on the dormitory floor for 2 months. Ultimately, plaintiff described "lower back pain and aches" which, by his own admission, did not even manifest until sometime in June. Finally, plaintiff acknowledged that he was not deprived of a mattress for these two months, only that he was deprived of a bed.

With regard to the May 13, 2008, smoking incident, plaintiff claimed that he suffered "slight" nausea and wheezing for a period of 6 minutes following his exposure to the tobacco smoke exhaled by Deputy Wilson.

Plaintiff's original complaint and his first amended complaint mentioned no physical manifestations resulting from the unsanitary conditions of the prison toilets and urinals. In his seconded amended complaint plaintiff alleged that these unsanitary conditions resulted in occasional "boils" on his buttocks. Plaintiff, however, has asserted a conclusory allegation; he offers no factual support for his assertion that the condition complained of caused his boils.

Further, even if accepted as true, the injury complained of amounted to nothing more than a *de minimis* injury.

Plaintiff was given two opportunities to describe the injury sustained as a result of being housed with smokers from April to October, 2008. Nevertheless, plaintiff only complained that cigarette smoke "effects [his] breathing and health." In other words, plaintiff's failure to allege

---

only home treatment suffice?" *Luong v. Hatt*, 979 F.Supp. 481, 486 (N.D. Tex. 1997). A more than *de minimis* physical injury, as defined by § 1997e(e) and the jurisprudence, "... is an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks. People in the regular and ordinary events and activities in their daily lives do not seek medical care for the injuries they receive unless it obviously appears to be of a serious nature, or persists after home remedy care." *Id.*

even a *de minimis* injury resulting from this exposure to tobacco smoke is fatal to this claim. In addition, because plaintiff's second amended complaint admits that RPCC instituted a no smoking policy in October of 2008, it appears that defendants in fact took steps to correct the problem and that plaintiff therefore has no claim for injury from continued exposure to second-hand smoke.

As plaintiff was previously instructed, in order to recover damages for exposure to dangerous conditions, a prisoner must show that he suffered an actual physical injury. See 42 U.S.C. § 1997e(e); compare *Alexander v. Tippah County, Miss.*, 351 F.3d 626, 631 (5th Cir.2003, *cert. denied*, 541 U.S. 1012, 124 S.Ct. 2071, 158 L.Ed.2d 623 (2004). Plaintiff, at worst, was inconvenienced and not injured or otherwise harmed by the conditions complained of; these conditions cannot rationally be equated to "cruel and unusual punishment" since the deprivations alleged were not so extreme as to "... rise to a level that results in physical torture..." *Bradley v. Puckett*, 157 F.3d at 1025. The injuries sustained by sleeping on a mattress on the floor, being exposed on one occasion to a corrections officer's exhaled tobacco smoke, unsanitary rest rooms, and being housed in a dorm with smokers are all *de minimis*, at worst. Plaintiff's Eighth Amendment conditions of confinement claims are frivolous.

### 3. Sales Tax and Postage

Plaintiff also complained that the prison commissary is not authorized to collect sales tax on inmate purchases. He implied that this policy is unconstitutional but does not explain how he arrives at such a conclusion. To the extent that the policy described violates Louisiana Law, such a contention fails to state a claim for which relief may be granted. Section 1983 provides relief for invasions of rights protected under federal law. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1997). To establish

liability under 42 U.S.C. § 1983, a civil rights plaintiff must establish two elements: (1) state action, i.e., that the conduct complained of was committed under color of state law, and (2) a resulting violation of federal law, i.e., that the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States. See *Collins v. City of Harker Heights*, 503 U.S. 115, 120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992); *Baker v. McCollan*, 443 U.S. 137, 142, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); see also *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir.2002).

Plaintiff does not demonstrate a violation of the constitution or laws of the United States and therefore his claim must be dismissed as frivolous.

He also claimed that he was charged $4.62 for a book of ten 41¢ stamps. He has not, however, shown which federal law this practice violates. Nor has he shown any prejudice (other than the loss of an unspecified amount of money) arising as a result of this claim. The *de minimis* nature of this claim warrants dismissal as frivolous.

### *4. Access to Courts*

Plaintiff claimed that the Warden refused to answer his grievances and interfered with his right of access to the courts when he failed provide plaintiff with a civil rights complaint form.

The narrowing of prisoner due process protections announced in *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), left prisoners without a federally-protected right to have grievances investigated and resolved. Any right of that nature is grounded in state law or regulation and the mere failure of an official to follow state law or regulation, without more, does not violate constitutional *minima*. See *Taylor v. Cockrell*, 2004 WL 287339 at *1 (5th Cir. Feb.12, 2004) (not designated for publication) (holding that "claims that the defendants violated ... constitutional rights by failing to investigate ... grievances fall short of establishing a

11

federal constitutional claim"). See also *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 138, 97 S.Ct. 2532, 53 L.Ed.2d 629 (Burger, C.J., concurring) (applauding the institution of grievance procedures by prisons but not suggesting that such procedures are constitutionally required); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) ("[T]he constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993) (quotation omitted) (holding that a prison grievance procedure is not a substance right and "does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment"); and *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.1988) ("There is no legitimate claim of entitlement to a grievance procedure."). Since plaintiff has no constitutionally protected right to a prison grievance procedure, his claim that the Warden failed to answer his grievances is frivolous.

His access to court claim fares no better. The right of access to the courts assures that no prisoner will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights. *Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996); *Norton v. Dimazana*, 122 F.3d 286, 289 (5th Cir.1997).

Plaintiff's claim, if true, establishes that Warden Cupp attempted to interfere with plaintiff's right of access to the courts. However, in order to demonstrate that the defendant actually deprived him of his constitutional right of access to the courts, plaintiff must allege and prove facts to establish that he suffered some <u>prejudice</u> as a result of the deprivation. See *Lewis v. Casey*, 518 U.S. at 350-355, 116 S.Ct. at 2179- 81; *Eason v. Thaler*, 73 F.3d at 1328; *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir.1993); *Henthorn v. Swinson*, 955 F.2d 351, 354

12

(5th Cir.1992), *cert. denied*, 504 U.S. 988, 112 S.Ct. 2974, 119 L.Ed.2d 593 (1992); and *Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir.1988).

Plaintiff has wholly failed to allege any <u>specific</u> facts establishing that he was <u>actually prejudiced</u> in connection with any pending or contemplated legal proceeding by the alleged wrongful act of the defendant. Plaintiff has not shown that defendant prohibited or inhibited him from filing and prosecuting the instant civil action. Thus, having failed to demonstrate prejudice, plaintiff's access to court claim must also be dismissed as frivolous.

### 5. *Racial Epithets*

Finally, plaintiff complained that on one occasion, a corrections officer used a derogatory racial epithet. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

Plaintiff's complaint does not establish a constitutional violation. Even verbal threats, without more, do not support a claimed constitutional violation. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir.1983); *Bender v. Brumley*, 1 F.3d 271, 274 n. 4 (5 Cir.1993), *Siglar v. Hightower*, 112 F.3d 191 (5 Cir.1997.) This claim, too, must be dismissed as frivolous.

### 6. *Damages*

Plaintiff prayed for damages of $25million. [rec. doc. 1, ¶V] He was specifically directed to amend his complaint to allege any injury or prejudice he suffered as a result of his various complaints. [rec. doc. 5] Other than the conclusory allegations mentioned above, nothing in his amended complaints suggests that he suffered anything more than *de minimis* physical injury as

13

a result of his exposure to the complained of conditions of confinement at RDC.

As noted above, Title 42 U.S.C. § 1997e was amended by the Prison Litigation and Reform Act (PLRA) of 1996. Under §1997e(e), prisoners are barred from recovering monetary damages for mental or emotional injuries "unless there is a prior showing of physical injury." *Crawford-el v. Britton*, 523 U.S. 574, 596, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). The "physical injury" required by § 1997e(e) must be more than *de minimis* but need not be significant. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999) (citing *Siglar v. Hightower*, 112 F.3d 191 (5th Cir.1997).

Plaintiff has alleged no significant physical injury resulting from the complained of conditions experienced during his incarceration at RDC, yet he seeks damages of $25 million. Plaintiff thus implies that he sustained mental or emotional injuries as a result of the defendant's actions. Since plaintiff was not physically or otherwise injured by the conditions complained of, §1997e(e) prohibits him from recovering monetary damages.

## 7. Conclusion and Recommendation

In short, each of plaintiff's claims are manifestly frivolous and dismissal on that basis is recommended. Accordingly,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed**

**legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, April 22, 2009.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE